[Civ. No. 21070. First Dist., Div. One. Mar. 12, 1964.]

FRED CULBERTSON et al., Plaintiffs and Appellants, v. FRANK CIZEK et al., Defendants and Respondents.

453

458

Edwards, Friborg & Duda and Darrell B. Edwards for Plaintiffs and Appellants.

Eugene K. Lawlor and Weinstock, Anderson, Maloney & Chase for Defendants and Respondents.

SULLIVAN, J.—Plaintiffs appeal from portions of an adverse judgment entered in an action for declaratory relief brought against a contractor, the surety on his performance bond and certain materialmen and subcontractors who are lien claimants.[1]

Plaintiffs Fred and Nell Culbertson own improved real property in Oakland. On August 12, 1958, they entered into a written "Builder's Contract" with Cizek under the terms of which Cizek agreed to construct thereon three stores with two apartments above them and to convert an existing beauty shop into two apartments "as Per Plans and Specifications" and to furnish all necessary labor and materials in connection therewith for the sum of $27,500 which plaintiffs agreed to pay. The above contract contained provisions governing alterations, additions and omissions.[2] In compliance with the

---

[1]Principal defendants below and sole respondents herein are Frank Cizek, hereafter called Cizek, the contractor, and United Pacific Insurance Company, hereafter called United, the surety on his bond. Cizek as principal and United as surety executed and delivered a so-called "contract bond" in favor of plaintiffs as owners and the Bank of America National Trust & Savings Association, hereafter called the Bank, as mortgagee. We will generally refer to the other defendants as "lien claimants."

[2]Paragraph eight thereof provided: "Should the Owner at any time during the progress of the work request in writing any alterations or deviations in, additions to, or omissions from this contract or the plan or specifications, he shall be at liberty to do so, and the same shall in no way affect or make void this contract; but the amount thereof shall be added to or deducted from the amount of the contract price aforesaid,

requirement of the Bank which was financing the work, Cizek and United furnished a performance bond in the sum of $27,500. Plaintiffs thereupon obtained a $30,000 loan from the bank, $2,500 of which was paid to them forthwith, the balance thereof to be disbursed by the lender in specified progress payments. However neither the contract nor the bond was filed in the office of the county recorder (see Code Civ. Proc., § 1185.1).

Cizek began work about September 3, 1958, and abandoned the job about March 24, 1959. During these seven months plaintiffs requested many additions to the original plans and specifications and made arrangements with Cizek for deviations therefrom. Nevertheless the valuation of these changes and extra work was never agreed upon in writing by the parties as specified by the contract. (See footnote 2, *ante.*) By March 27, 1959, four progress payments of $5,500 each had been made to Cizek by the Bank. However Cizek owed substantial sums of money to his subcontractors and materialmen who during May and June 1959 filed claims of lien against plaintiffs' property.

On July 16, 1959, plaintiffs commenced the instant action against Cizek, United and a number of the above lien claimants, alleging the existence of a controversy among all the parties to the action as to their legal rights and duties under the contract and the bond. The core of the dispute as alleged in the complaint is this: Plaintiffs claimed that they owed Cizek $5,500; Cizek claimed that they owed him $19,857.14 of which $15,739.14 was for extras; plaintiffs claimed that the $19,857.14 was for work and materials called for by the contract; United claimed it was not required by its bond to pay the lien claimants and complete the construction work; and plaintiffs claimed a credit for work not completed by Cizek

---

as the case may be, by a fair and reasonable valuation. And this contract shall be held to be completed when the work is finished in accordance with the original plans, as amended by such changes, whatever may be the nature or extent thereof.''

Paragraph nine provided: ''The rule of practice to be observed in the fulfillment of the last foregoing paragraph (eighth) shall be that the character and valuation of any or all changes, omissions, or extra work shall be agreed upon and fixed in writing, signed by the Owner and the Contractor, prior to execution.''

Paragraph ten provided in part that any dispute between the parties as to the valuation of extra work, work done or work omitted would be subject to arbitration. This provision was expressly waived by the parties at trial.

the amount thereof being in dispute. Plaintiffs further alleged that their property was threatened with the foreclosure of the various liens filed by the lien claimants.

Cizek filed an answer admitting that he had executed the builder's contract but alleging that it had been abandoned by the parties as the result of the numerous alterations and deviations from the plans and specifications. In addition, he filed a cross-complaint seeking recovery of the above sum of $19,857.14 and the foreclosure of his contractor's lien theretofore filed for such amount. The theory of both the answer and the cross-complaint is that the written contract had been abandoned and therefore did not define the rights of the parties; that the total claims against the property amounted to $43,257.14 which included a reasonable overhead and profit for Cizek in the sum of $2,448.52; and that plaintiff having paid Cizek $23,400, the balance of $19,857.14 was due. As we point out *infra,* this concept of the reasonable value of the work and materials is echoed in the court's findings, despite the fact that the court found that the written contract was *not* abandoned.

United filed a separate answer denying all liability to plaintiffs and asserting, *inter alia,* that the alteration and modification of the builder's contract by plaintiffs and Cizek without United's consent had released the surety from any obligations under the performance bond.[3]

The trial court made copious and detailed findings of fact. So far as is here pertinent the court found: that the "Builder's Contract" was a valid contract under which the parties thereto intended that there would be changes and additions to work for which a reasonable amount would be paid in addition to the contract price; that after the commencement of the work, some changes, additions and alterations of the

---

[3]A separate action brought by San Francisco Glass Company, defendant lien claimant herein, was ordered consolidated with the instant action for the purposes of trial. Tancready Inc., defendant lien claimant herein, having also filed a separate action, stipulated that it would be bound by the court's judgment in the instant action. All other lien claimants joined as defendants by plaintiffs filed answers, cross-complaints, and counterclaims. The pretrial conference order stated that the claims of several of the lien claimants had been stipulated to as due and owing. Those claims not disposd of by the stipulation were decided in favor of the claimants, and have since been satisfied by plaintiffs. The validity of the allowance of these claims is not in issue on this appeal, the sole parties and the sole rights to be determined being those of the plaintiffs, Culbertson, and the defendants and cross-complainants Cizek and United.

plans and specifications were made by plaintiffs and Cizek without the actual knowledge of United or the Bank but that they were not of such a nature as to be material or substantial, being in the nature of amendments to the original plans; that the plaintiffs and Cizek therefore had not abandoned the written contract and that United was liable on its performance bond; and that some of the work, labor and materials supplied and done by Cizek was not done in a substantially good and workmanlike manner.

The court further found: that the unpaid bills of four of the defendant lien claimants amounted to $11,029.54; that the total cost of the work was $42,668.45[4]; that the reasonable cost of the work was $38,168.45[5]; and that plaintiffs "should be entitled to a credit or offset from the said total cost of construction in the sum of $4,500.00." The last "finding" as well as several other related "findings" on which we shall comment are actually conclusions of law. The court found that "it would be inequitable" for either Cizek or plaintiffs to pay the full amount of the $11,029.54 due lien claimants but that $1,359.40[6] thereof should be paid by Cizek and the balance of $9,670.14 ($11,029.54 less $1,359.40) should be paid by plaintiffs.

The court concluded[7] that all of the defendant lien claimants were entitled to a judgment of foreclosure against plaintiffs' property and a money judgment against Cizek and

[4] The finding discloses that this figure is obtained by taking the total of the amount paid Cizek by plaintiffs, the amounts paid subcontractors, materialmen and laborers by plaintiffs, the amount paid such persons by Cizek over what he received from plaintiffs, and the unpaid bills of the four defendant lien claimants in the sum of $11,029.54.

[5] The findings do not disclose how the court arrived at the sum of $38,168.45. Remarkably the precise difference between the "total cost" and "reasonable cost" figures is the round figure of $4,500.

[6] In related findings this figure is arrived at thus: Cizek paid out $26,540 to various subcontractors, materialmen and laborers (cf. footnote 4, *ante*) but, receiving only $23,400 from plaintiffs, was found to have "sustained a loss" of $3,140.60. Finding that Cizek "should equitably be liable for the same amount as the credit" of $4,500 allowed plaintiffs, the court then determined Cizek's additional obligation to be $1,359.40 ($4,500 less $3,140.60).

[7] For convenience of treatment we have set forth in substance the court's conclusions on these matters both as they appear among the findings of fact and as they are set forth under "conclusions of law." We properly do this since a conclusion of law does not lose its characteristic as such by being placed among the findings of fact. (*Estate of Blake* (1910) 157 Cal. 448, 456 [108 P. 287], overruled on other

United; that such lien claimants should enforce their judgments of foreclosure *first* against plaintiffs' property and *secondly* against Cizek and United if the foreclosure sale did not produce sufficient funds to pay the claims in the proportion as explained by us above; that if United were compelled to pay any sums on the proportion found to be the obligation of plaintiffs (namely $9,670.14), it "should have recourse" for such amount against plaintiffs and Cizek; and that "[p]laintiffs herein should recover nothing from defendants [and] [d]efendant FRANK CIZEK should recover nothing from plaintiffs."[8] Judgment was entered accordingly.

We are presented here with two basic questions: First, did the trial court make a proper determination of the rights and duties of plaintiffs and Cizek in the light of the written contract entered into by such parties? Secondly, did the court make a proper determination of United's liability in the light of the contract bond furnished by it as surety?

Before we reach the merits of the first question, some preliminary matters require our attention. ▮ An action brought under section 1060 of the Code of Civil Procedure for declaratory relief is an equitable proceeding and the powers of a court thus invoked are as broad and as extensive as those exercised by such court in any ordinary suit in equity. (*Adams* v. *Cook* (1940) 15 Cal.2d 352, 362 [101 P.2d 484]; *City of Los Angeles* v. *City of Glendale* (1943) 23 Cal.2d 68, 81 [142 P.2d 289]; *Rolapp* v. *Federal Building & Loan Assn.* (1936) 11 Cal.App.2d 337, 342 [53 P.2d 974]; *Ho Gate Wah* v. *Fong Wan* (1953) 118 Cal.App.2d 159, 165 [257 P.2d 674].) ▮ While the court in a declaratory relief action may properly determine questions as to rights and duties arising out of an existing contract (*Foster* v. *Masters Pontiac Co.* (1958) 158 Cal.App.2d 481, 486 [322 P.2d 592]; see 15 Cal.Jur.2d, Declaratory Relief, § 71, pp. 225-230), it may not make a new contract for the parties or, in lieu of construing an existing contract, incorporate new obligations into it. (*Lyon* v. *Goss* (1942) 19 Cal.2d 659, 673-674 [123 P.2d 11].) ▮ Its duty is to provide for a determination

grounds in *Estate of Stanford* (1957) 49 Cal.2d 120, 129 [315 P.2d 681]; *Lenchner* v. *Chase* (1950) 98 Cal.App.2d 794, 802 [220 P.2d 921]; *Jon-Mar Co.* v. *City of Anaheim* (1962) 201 Cal.App.2d 832, 840 [20 Cal.Rptr. 350].)

[8] As we discuss *infra*, the court's denial of recovery to Cizek rests on findings that he was not a duly licensed contractor and that the work done by him was of the type described as general contracting which required a license.

of the purposes intended by the instrument, and not for a modification of its terms. (*Putnam* v. *Putnam* (1942) 51 Cal. App.2d 696, 699 [125 P.2d 525]; *Flynn* v. *Flynn* (1951) 103 Cal.App.2d 91, 96 [229 P.2d 5]; *Taliaferro* v. *Taliaferro* (1954) 125 Cal.App.2d 419, 427 [270 P.2d 1036].) We cannot here embrace, as respondents urged upon us at oral argument, a philosophy which contemplates in this kind of proceeding a jural omnipotence unfettered by rules of law. ██ "[E]quity is bound by rules of law; it is not above the law; it cannot controvert the law." (*Floyd* v. *Davis* (1893) 98 Cal. 591, 601 [33 P. 746]; see also *Boyce* v. *Fisk* (1895) 110 Cal. 107, 112 [42 P. 473].) ██ "The general rule is this: Where a contract has been voluntarily, understandingly, and fairly entered into, and is free from fraud, accident, mistake, or any other circumstance recognized as a ground for equitable relief, a court of equity must, when its jurisdiction is properly invoked, give full force and effect to such contract; it cannot ignore, disturb, or alter the rights created by it, or grant relief against their enforcement. ██ A court of equity cannot . . . make a contract for the parties, nor vary the terms of one made, nor substitute another one therefor, nor can it remedy a wrong by making in effect a contract between the parties with reference to the subject matter." (30 C.J.S., Equity, § 62, p. 411.)

██ With these principles in mind we turn to the findings. As stated above the court found that the builder's contract was valid and in effect. The contract therefore defined the rights and duties of the parties and among other things determined the amount to which Cizek was entitled for the construction work. The basic price was $27,500. Under the provisions of the contract (see footnote 2, *ante*) the amount of alterations, additions or omissions to or from the contract, plans or specifications "shall be added to or deducted from the amount of the contract price aforesaid, as the case may be, by a fair and reasonable valuation."

██ Our inquiry then narrows to whether or not the trial court determined plaintiffs' liability for the construction work in accordance with the terms of the contract. From our examination of the findings and conclusions, we are convinced that it did not. Essentially, the court based its determination of plaintiffs' liability on the *total cost* of the work ($42,668.45). It made a $4,500 adjustment of this figure,[9]

---

[9]The conclusion of law, placed among the findings, that plaintiffs are entitled to such $4,500 as a credit or offset, does not disclose how the

and thereupon determined the *reasonable total cost* of the work ($38,168.45). But *under the terms of the contract,* the amount due from plaintiffs to Cizek was not to be determined by the total cost or total reasonable cost of the work, that is, by totalling all moneys paid out and all unpaid bills (see footnote 4, *ante*). The amount due was to be determined by taking the basic price of $27,500 plus or minus the reasonable valuation of additions or omissions. In a word, the starting point was the agreed price, not the total cost. ■ It is almost unnecessary to point out that where a contract provides for a fixed price, the cost to the contractor is immaterial. He may have underbid the job and thus have completed it at a loss. ■ Thus in the case before us the reasonable cost of the labor and materials is relevant only on the extras or other deviations.

■ The court made no finding as to the reasonable value of the extras or as to the reasonable value (net plus or minus) of all changes and deviations. This was a material issue raised by the pleadings[10] and set forth by the pretrial conference order as remaining in dispute.[11] Instead the court made a finding as to the reasonable value of the total cost of construction. This finding was immaterial and necessarily inadequate as a finding of the reasonable value of extras.

■ It is settled that "findings are required on all material issues raised by the pleadings and evidence, unless they are waived, and if the court renders judgment without making findings on all material issues, the case must be reversed." (*James* v. *Haley* (1931) 212 Cal. 142, 147 [297 P. 920]; see also *De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858, 873 [250 P.2d 598]; *Edgar* v. *Hitch* (1956) 46 Cal.2d 309, 312 [294 P.2d 3]; *Bertone* v. *City & County of San Francisco* (1952)

court arrived at the adjustment or just exactly what it represents. The record discloses that at the time of the announcement of its decision, the court stated to counsel that it would make an allowance of 10 per cent of the total cost in favor of plaintiffs. The resulting figure of $4,290.21 (based on a total cost of $42,902.15) appears to approximate the final allowance of $4,500.

[10]See summary of allegations of complaint, *supra*.

[11]The court adopted plaintiffs' pretrial statement as part of its pretrial conference order. Such statement contains the following: "Issues: The issues raised by the pleadings are the rights and duties of the plaintiffs under their contract with Cizek, the liability of United Pacific Insurance Company under its performance bond, and whether or not, or the extent to which the lien claims of the subcontractors constitute work under the general contract, or extras, for which the plaintiffs are liable."

111 Cal.App.2d 579, 586 [245 P.2d 29]; *Keroff* v. *Snyder* (1962) 208 Cal.App.2d 429, 432 [25 Cal.Rptr. 234].)

United argues that the effect of the findings of the trial court is that plaintiffs "will wind up" paying the contract price of $27,500 plus $15,168.45 for changes, additions and extras[12] and that the findings considered as a whole cover all material issues.

The general tenor of this argument is that although the court made no *express* findings as to the reasonable value of the changes and deviations, the amount due from plaintiffs on the contract and the amounts due for changes and deviations, all of these facts can be reasonably *implied* from the findings which the court did make. As the court said in *Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593]: "[W]hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made." (See also *Greenberg* v. *Hastie* (1962) 202 Cal.App.2d 159, 173 [20 Cal.Rptr. 747].)

However the above rule set forth in *Richter, supra,* is not operative where the appealing party made a written request in the trial court for a specific finding on the issue in controversy. (Code Civ. Proc., § 634; *City of National City* v. *California Water & Telphone Co.* (1962) 204 Cal.App.2d 540, 545 [22 Cal.Rptr. 560]; *Ruppert* v. *Jackson* (1963) 212 Cal.App. 2d 678, 682-683 [28 Cal.Rptr. 467].) In the instant case, plaintiffs filed detailed objections to the findings of fact and conclusions of law prepared by counsel for Cizek[13] in

---

[12]United states in its brief: "The effect of the findings of the trial court is that appellants will wind up paying the contract price of $27,500.00 plus $15,168.45 for changes, additions and extras (which is the difference between the total actual cost of $42,668.45 and the contract price of $27,500.00), less $4,500.00 for omissions, deletions and inferior workmanship, or a total of $38,168.45 (the *reasonable* cost or value of the improvements after *all* allowances are considered), for an improvement that actually cost $42,668.45. The $4,500.00 loss will be absorbed by respondent Cizek."

[13]Plaintiffs' motion to augment the record on appeal by including therein findings of fact and conclusions of law submitted by them on July 27, 1961, and objections filed February 22, 1962, to findings of fact and conclusions of law submitted by Cizek on February 19, 1962, after the court's announcement on January 18, 1962, of its intended decision, was submitted at the time of the argument of this cause on its merits. We have granted plaintiffs' motion.

which among other things they asked the court to delete any finding as to the loss sustained by Cizek as being immaterial (findings 19 and 23); and to specify what the contract price was, what amount was due from them for extras and what amounts were allowable to them as credits for omitted or defective work (finding 20).[14] Plaintiffs also objected to a number of findings as conclusions of law and to various conclusions of law themselves. It is obvious, from our examination of the objections, that plaintiffs sought to have the trial court determine their liability according to the terms of the contract, even though it would not have been incumbent upon the court to accept plaintiffs' figures on valuation. The trial court, however, denied plaintiffs' objections and requests. Under the mandate of Code of Civil Procedure section 634 we cannot now infer that the court found on the foregoing issues and conclude, as United would have it, that that was the *effect* of the findings which were made. (*Calloway* v. *Downie* (1961) 195 Cal.App.2d 348, 352-353 [15 Cal.Rptr. 747]; *City of National City* v. *California Water & Telephone Co., supra; Ruppert* v. *Jackson, supra*.) ▮ Even if we were not under the restraint of the above statute, we doubt that the inference indulged in by defendants could properly be drawn. The findings nowhere intimate that the court was determining the rights and liabilities of the parties according to the contract but rather on a basis which denied recognition of the contract. Under such circumstances the judgment must be reversed.

We turn to examine the court's determination of United's liability under the contract bond. We will thereafter discuss the relationship of this issue to other issues before us and to our disposition of the appeal.

The bond is executed by Cizek as principal and United as surety in the sum of $27,500 and runs in favor of plaintiffs and the Bank. It refers to the builder's contract between plaintiffs and Cizek "a copy of which is or may be hereto annexed" and provides in substance that the condition of the bond is that Cizek shall faithfully perform the work contracted for and shall pay or cause to be paid in full, the

[14]Plaintiffs requested that the court find: that the contract price was $27,500; the extras ordered by plaintiffs were $3,764.16; the total contract price and extras were $31,264.16; the work not furnished by Cizek was $2,644.29; the work improperly done involved costs of repair in the sum of $1,019; and that the work called for in the contract but paid for by plaintiffs totalled $1,186.

claims of all persons performing labor or furnishing materials in connection with the construction work. By its express terms, it was executed for the purpose of complying with Code of Civil Procedure section 1181 et seq. (liens of mechanics and others upon real property) and inures to the benefit of all persons performing labor and furnishing materials ''so as to give such persons a right of action to recover upon this bond in any suit brought to foreclose the liens provided for by the laws of the State of California, or in a separate suit brought on this bond.''

 The bond thus incorporated by reference the builder's contract ''and thereby all of the provisions of the contract became provisions of the bond as a performance bond.'' (*C.O. Sparks, Inc.* v. *Pacific Coast Paving Co.* (1958) 159 Cal.App.2d 513, 517 [324 P.2d 293]; *W. P. Fuller & Co.* v. *Alturas School Dist.* (1915) 28 Cal.App. 609, 612-613 [153 P. 743]; *Sunset Lumber Co.* v. *Smith* (1928) 91 Cal.App. 746, 751 [267 P. 738].) ''A bond which is given for the faithful performance of a contract, to which it refers, binds the surety for labor performed and materials furnished thereunder as completely as though the surety were a party to the contract. [Citations.]'' (*Pacific States Elec. Co.* v. *United States Fidelity & Guar. Co.* (1930) 109 Cal.App. 691, 693-694 [293 P. 812]; *C.O. Sparks, Inc.* v. *Pacific Coast Paving Co., supra.*) The court found that neither the contract nor the bond was filed in the office of the county recorder. Failure to file the contract did not render the contract wholly void but had the effect of making the owners' property liable to the lien claimants for the full reasonable value of the labor done or material furnished rather than limiting such liability to the amount due from the owners to the contractor. (Code Civ. Proc., § 1185.1; *Bird* v. *American Surety Co.* (1917) 175 Cal. 625, 629 [166 P. 1009], decided under former Code Civ. Proc., § 1183.)[15] Likewise, failure to so file the bond did not render the bond void or add to the burden of the surety. The bond itself does not provide that filing with the recorder is a prerequisite to its validity, United does not here so contend, and in any event, the bond is valid as a common-law bond for the benefit of all persons named therein as beneficiaries. (*Hammond Lumber Co.* v. *Willis* (1915) 171 Cal. 565, 568 [153 P. 947];

---

[15]The lien of a general contractor would of course be limited to the agreed contract price. (Code Civ. Proc., § 1185.1, subd. (a).)

*Dodd* v. *Maddox* (1925) 72 Cal.App. 705, 709 [238 P. 130], both decided under former Code Civ. Proc., § 1183.)

■ From the foregoing we reach the following conclusions: First, it was the obligation of Cizek and United to pay the lien claimants in full. ■ Secondly, upon not being paid, the lien claimants were entitled to two remedies: (a) to proceed against plaintiffs' property for the full amount of their liens (the contract and bond not having been filed) and (b) to proceed to obtain a separate personal judgment in such mechanics' lien action against Cizek and United as the persons personally liable for their respective debts notwithstanding the lien. ■ The right to foreclose the lien is not the exclusive remedy; the two remedies are cumulative and may be pursued simultaneously so long as any money collected on the personal judgment is credited on the amount of the lien. (Code Civ. Proc., § 1200; *Faucett* v. *Riveroll* (1928) 203 Cal. 438, 440 [264 P. 1098]; *Dodd* v. *Mattox, supra,* 72 Cal.App. 705, 709; *Wm. J. Bettingen Lumber Co.* v. *Kerrin* (1929) 99 Cal.App. 686, 689-690 [279 P. 163]; *Withington* v. *Shay* (1941) 47 Cal.App.2d 68, 77 [117 P.2d 415, 119 P.2d 1]; *Adolph* v. *Municipal Court* (1960) 181 Cal.App.2d 198, 200 [5 Cal.Rptr. 212].)[16]

■ The trial court however, while rendering a personal judgment in favor of the lien claimants and against both Cizek and United for the full amount of the unpaid claims and also rendering a judgment of foreclosure against plaintiffs' property, further directed that the judgment in favor of the lien claimants be satisfied first from a foreclosure of plaintiffs' property and only if it were not thereby fully satisfied, then to proceed further against Cizek and United.[17] We have concluded that the court erred in issuing the above directive. Since the remedies of the lien claimants were

---

[16] Under Code Civ. Proc., § 1200, lien claimants are also entitled to maintain a separate action to obtain such personal judgment. (*Homestead Savings & Loan Assn.* v. *Superior Court* (1961) 195 Cal.App.2d 697, 701 [16 Cal.Rptr. 121].)

[17] Paragraph 7 of the judgment in pertinent part provides: "... and said defendants are directed to proceed in execution, first against the said real property by such foreclosure proceedings and to receive therefrom, a total not to exceed $9,670.14, plus the interest thereon."

Paragraph 9 thereof provides: "That should said real property fail to produce the sum as above set forth upon foreclosure sale, then said defendant lien claimants shall recover said deficiency from defendants FRANK CIZEK and UNITED PACIFIC INSURANCE COMPANY."

The above portions of the judgment conformed to the conclusions of law.

cumulative and assertible simultaneously (see authorities *supra*) the court lacked authority to prescribe additional regulations for their incidence, thereby making plaintiffs' property primarily liable and placing defendants in a considerably less exposed position of secondary liability. ▮ Furthermore, we think that this error becomes more pronounced when considered in connection with that portion of the judgment which denied all recovery to Cizek. As noted above (see footnote 8, *ante*) and as discussed *infra*, the court found that Cizek was not at all times material to the case a duly licensed contractor and concluded, despite the substantial amount of money due from plaintiffs for the construction work according to the court's findings, that Cizek should recover nothing from them. It thus appears that by fastening a primary liability on plaintiffs' property (see footnote 17, *ante*) the court was in effect permitting the unlicensed contractor to recover indirectly from plaintiffs an amount which the court concluded they ''should equitably pay'' towards Cizek's obligations. In the light of all these circumstances we are of the view that the court did not make a proper determination of the liability of both defendants.

▮ This brings us to defendant United's contention that plaintiffs have not been prejudiced by the errors on which they rely because the trial court committed error in finding: (1) that the alterations, additions and modifications of and to the written contract, plans and specifications were not material and substantial; (2) that the written contract had not been abandoned and United was liable on its contract bond; and (3) that Cizek was not at all times material to the case a duly licensed general contractor. It is to be noted that neither Cizek nor United has appealed from the judgment or any part thereof. Paying lip service to the general rule that a respondent who does not appeal cannot attack error, United nevertheless invokes section 956 of the Code of Civil Procedure.[18] We find no merit in United's argument.

---

[18]Code Civ. Proc., § 956, provides: ''Upon an appeal from a judgment the court may review the verdict or decision, and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment, or which substantially affects the rights of a party. The court may also on such appeal review any order on motion for a new trial. *The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error*

As to the first two findings mentioned above, the record discloses that they were made on substantially conflicting evidence and defendants are bound thereby. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) Suffice it to say that both oral and documentary evidence support these findings. The positions of the parties were in sharp conflict as to whether or not the contract was valid and in effect. Cizek asserted that the contract had been signed merely to obtain a bank loan, that it had been abandoned, and that the true contract was an oral arrangement on a time and materials basis. Throughout the trial defendants attempted to show that the numerous alterations and additions established that the parties had abandoned the contract. Plaintiffs on the other hand testified that they always proceeded according to the contract, that they never entered into a time and materials contract, and that they did not use the written contract merely as a device to obtain a bank loan. The contract itself provided for alterations, additions and omissions; defendant admitted that he and plaintiffs had never discussed abandoning the contract; defendant further testified in his deposition that the building had been built according to the plans. The trial court had before it not only the contract, plans and specifications but also heard extensive testimony descriptive of the work done. The court rejected defendant's contentions as to the arrangements between the parties and found that the contract was valid and in effect.

As to the third finding complained of, the court found that Cizek was not duly licensed, that this was not known to any of the parties, except Cizek, until the commencement of the instant action, that the work done by Cizek was general contracting, thus requiring that he be duly licensed as a general contractor. It will be recalled that Cizek had filed his own lien against plaintiffs' property and by cross-complaint sought not only recovery of $19,857.14 from plaintiffs but also foreclosure of his lien. The court concluded that Cizek should recover nothing from plaintiffs and entered judgment accordingly. Neither Cizek nor United appealed from the judgment. Thus the foregoing matters pertaining to

*or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.* The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken.'' (Italics added.) The portion in italics was added to the section in 1957.

Cizek's license and the court's conclusion that he should recover nothing were finally adjudged. We therefore decline United's invitation to reexamine the pertinent finding since Cizek could have appealed from the judgment denying him recovery and on such appeal secured a review of the finding now complained of. ▮ The provisions of Code of Civil Procedure section 956 on which United relies do not authorize us to review any decision or order from which an appeal might have been taken. (See footnote 18, *ante*.) Furthermore, it does not appear, nor does United explain, how the above claim dealing with the third finding, even if found to be tenable, would necessarily result in an affirmance of the judgment notwithstanding plaintiffs' contentions. (See *Central Manufacturing Dist., Inc.* v. *Board of Supervisors* (1960) 176 Cal.App.2d 850, 857 [1 Cal.Rptr. 733].)

Finally United contends that if the judgment is reversed at all, it should be reversed in its entirety. While recognizing the rule that a judgment becomes final as against a nonappealing party despite its reversal on the appeal of other parties, United cites *Blache* v. *Blache* (1951) 37 Cal.2d 531, 538 [233 P.2d 547] for the proposition that "this rule is not applied where portions of a judgment adverse to a nonappealing party are so interwoven with the whole that appeal from a part affects the other parts; in such a situation the appellate court can reverse the entire judgment if it is necessary to do justice."

▮ The applicable rules are fully set forth in the leading case of *American Enterprise, Inc.* v. *Van Winkle* (1952) 39 Cal.2d 210, 216-217 [246 P.2d 935] : "The well recognized rule is that there may be an appeal from a part of a judgment only if that part is severable. [Citations.] ▮ Where portions of a judgment are truly severable, the appellate court is without jurisdiction to consider the parts from which no appeal has been taken. [Citations.] ▮ And the appellate court will consider the portion before it independently of the other parts. [Citations.] ▮ Modification or reversal of the portion of the judgment from which the appeal has been taken has no effect upon the other portions. [Citations.]

▮ "The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or

issues which have not been attacked. [Citations.] '[I]n order to be severable, and therefore appealable, any determination of the issues so settled by the judgment . . . must not affect the determination of the remaining issues whether such judgment on appeal is reversed or affirmed . . . . Perhaps another way of saying it would be that the judgment is severable when the original determination of those issues by the trial court and reflected in the judgment or any determination which could be made as the result of an appeal cannot affect the determination of the remaining issues of the suit. . . .' [Citation.]''[19]

 We proceed to apply the above rules to the judgment in the instant case. Plaintiffs have appealed only ''from the provisions of sections numbered 1, 7, 8, 9, 10, 11, 12, 13 and 15 of the Judgment . . . .'' Paragraph (i.e., section) 1 provides that plaintiffs recover nothing from Cizek. Paragraphs 7 through 13 deal with the foreclosure of the mechanics' liens, the directions that resort first be had to plaintiffs' property, the resort secondarily to Cizek and United, and the application of the proceeds of any foreclosure sale, all of which we have discussed *supra*. (See also footnote 17, *ante*.) Paragraph 15 provides for United's right of recovery against plaintiffs and Cizek.[20] *In toto* the foregoing provisions encompass the area of controversy discussed by us above.

The remaining portions of the judgment *not* appealed from are paragraphs 2, 3, 4, 5, 6 and 14. Paragraph 2, already mentioned, provides that Cizek recover nothing from plaintiffs. Under normal circumstances, the provisions of paragraph 2 would appear to be closely interwoven with those of paragraph 1 (that plaintiffs recover nothing from Cizek) since whether either party may recover from the other depends upon a determination of their rights and liabilities according to the terms of the builder's contract entered into between them and found by the court to be valid and not abandoned. However paragraph 2 of the judgment as well as

---

[19]*American* cites a number of authorities including *Blache*.

[20]Paragraph 15 provides: ''That said defendant UNITED PACIFIC INSURANCE COMPANY shall have a right of recovery for any sums it pays to the defendant lien claimants hereinabove named and said right of recovery shall be against the plaintiffs for all sums in excess of $1,359.40 and interest thereon and costs of suit, and shall be against defendant FRANK CIZEK for all sums it pays to the said defendant lien claimants pursuant to the orders contained herein for their recovery.''

the similar underlying conclusion of law is supported by the court's finding that Cizek was not a duly licensed contractor. As we have pointed out, Cizek did not appeal from the judgment and this matter has now been finally adjudged. Notably, too, it is United not Cizek which now attempts to elude such final determination. ▆ Nevertheless, since Cizek was thus unlicensed, it is settled that he could not "bring or maintain any action in any court of this State for the collection of compensation . . ." (Bus. & Prof. Code, § 7031; *Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 609 [204 P.2d 23]; *Grant* v. *Weatherholt* (1954) 123 Cal.App.2d 34, 41-42 [266 P.2d 185]; *Bierman* v. *Hagstrom Construction Co.* (1959) 176 Cal.App.2d 771, 775-777 [1 Cal.Rptr. 826, 82 A.L.R.2d 1424]) including any action to foreclose a contractor's lien. (*Gore* v. *Witt* (1957) 149 Cal.App.2d 681, 686 [308 P.2d 770].) ▆ However, although Cizek was found not to hold the required contractor's license, the foregoing statute and rule of law do not prevent him from offsetting as a defense against sums due the plaintiffs any amounts that would otherwise be due Cizek under his contract. (*Marshall* v. *Von Zumwalt* (1953) 120 Cal.App.2d 807, 809-810 [262 P.2d 363]; *S & Q Const. Co.* v. *Palma Ceia Development Organization* (1960) 179 Cal.App.2d 364, 367 [3 Cal.Rptr. 690]; *Steinwinter* v. *Maxwell* (1960) 183 Cal.App.2d 34, 38 [6 Cal.Rptr. 496].) The philosophy of these cases permits the unlicensed contractor to assert his counterdemands defensively as it were, to the end of reducing in whole or in part the claims against him but without authorizing an affirmative judgment in the contractor's favor for an excess. (See *Steinwinter* v. *Maxwell, supra*.)[21] This result is consistent with the position taken by the courts that despite possible injustice resulting between the parties, they will not "lend

[21]In *Steinwinter*, for example, plaintiffs who were unlicensed contractors sued the owners who cross-complained for damages for breach because of allegedly defective work. The contractors answered the cross complaint by a general denial and an affirmative defense of money due them under the contract. The trial court granted defendants' motion for summary judgment on the complaint based on Bus. & Prof. Code, § 7031. After a trial on the issues raised by the cross-complaint, the trial court concluded that the owners were entitled to recover thereon the sum of $4,136.65 but found there was a balance due the contractors of $4,751.09 and allowed the contractors an equitable offset in that amount against the recovery allowed the owners. However the court further ruled that since the offset exceeded the owners' recovery, no monetary judgment could be rendered and gave the owners judgment for their costs.

474

their assistance to a party who seeks compensation for an illegal act." (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 150 [308 P.2d 713].) It is clear then that a determination of the issues embraced within those portions of the judgment appealed from would not affect paragraph 2 since for the reasons noted above in no event can Cizek obtain an affirmative judgment allowing him to recover against plaintiffs. (*American Enterprise, Inc.* v. *Van Winkle, supra,* 39 Cal.2d 210, 217; *Blum* v. *City & County of San Francisco* (1962) 200 Cal.App.2d 639, 648 [19 Cal.Rptr. 574].)

 Paragraphs 3 through 6 of the judgment grant recovery to the various lien claimants against Cizek and United. Clearly these parts of the judgment are not so interwoven with the parts appealed from as to preclude an independent review of the latter. A redetermination of the obligations between plaintiffs and Cizek does not affect the obligations of Cizek and United to these third-party lien claimants. Indeed on this appeal the parties appear to agree that such latter obligation exists in the amount set forth in the judgment. (See also footnote 3, *ante.*) In the same way, paragraph 14 allowing United attorneys' fees and costs against Cizek is not affected by those parts of the judgment appealed from.

We conclude therefore, contrary to United's contention, that we need not reverse the judgment in its entirety. The judgment nevertheless must be reversed as to those portions appealed from because the findings of fact relating thereto are inadequate, because findings on material issues relating thereto have not been made, and because the court did not correctly determine the rights and obligations of the parties before us according to the contract and bond.

 On remand, the trial court should determine, *inter alia,* the following: the amount, if any, due Cizek from plaintiffs based on the contract price of $27,500 and allowing for the addition and deduction, as the case may be, of any alterations or deviations in, additions to, or omissions from the contract, plans or specifications; and the amount, if any, due plaintiffs from Cizek for any unworkmanlike performance or other breach of contract on Cizek's part. As explained *supra,* the court should allow Cizek an equitable offset for the amount, if any, due him from plaintiffs against any amounts found to be due plaintiffs from him but only to the extent of such latter amounts and not in excess thereof.

The court should also determine the amounts, if any, which plaintiffs have been compelled to pay lien claimants in order to relieve their property from liens filed thereon in connection with unpaid bills of Cizek. (See *Stone* v. *Scrimian* (1926) 198 Cal. 520, 523-524 [246 P. 45].) Our attention has been called to the fact, not found in the instant record, that plaintiffs may have paid some lien claimants after judgment herein. Because in an action for declaratory relief it is the proper function of the court to make a full disposition of all questions before it (see *American Enterprise, Inc.* v. *Van Winkle, supra,* 39 Cal.2d 210, 219) and because we think it is in the interest of justice to all parties, we apprehend no valid reason why on remand the court should not by proper pleading or stipulation filed, receive evidence of any such payments made after judgment.

As we have explained, those portions of the judgment granting recovery to the lien claimants should permit them to pursue their remedies provided by law without any restrictions thereon. In the event of a judgment in favor of plaintiffs, such judgment in the light of the contract and bond must be given against both Cizek and United.

Except for the reception of evidence on the matter of liens paid after judgment, we find nothing in the record which impels us to order a new trial. The case was fully tried and, with the exception noted, there is no necessity to take further evidence. Under the circumstance it is appropriate to remand the cause with directions to the trial court to make adequate findings on all issues involved, based on the evidence now before it, and in conformity with the views herein expressed; to draw proper conclusions of law therefrom; and to enter judgment accordingly. (4 Cal.Jur.2d, Appeal and Error, § 670, pp. 561-562.)

It is ordered, therefore, that the judgment be reversed as to those portions thereof appealed from and that the cause be remanded with directions to the trial court to set aside such portions of the judgment and those findings of fact and conclusions of law pertinent thereto; to receive evidence, if any, on the limited issue of liens paid after judgment; and thereupon, having reexamined and redetermined all issues relating to the portions of the judgment appealed from in conformity with the views herein expressed (but without redetermining those issues relating to the portions of the judgment not appealed from), to make and file findings of fact thereon based upon the evidence now before it; to draw proper con-

clusions of law therefrom; and to enter judgment accordingly. Such findings of fact, conclusions of law and judgment shall be prepared, signed, filed and entered in the manner provided by law.

The judgment is reversed as to those portions thereof appealed from and the cause is remanded to the trial court to proceed with the disposition thereof under the directions and in conformity with the views herein expressed. Appellants shall recover costs on appeal.

Bray, P. J., and Molinari, J., concurred.